**Bob S. DEMPSEY d/b/a Fort Davidson Oil Company, Appellant,**

v.

**RHODES OIL COMPANY et al., Appellees.**

No. 8–5.

Temporary Emergency Court of Appeals.

Argued Nov. 1, 1979.

Decided March 20, 1980.

---

Richard H. Anton, Kansas City, Mo., with whom James R. Wyrsch, Koenigsdorf, Kusnetzky & Wyrsch, Kansas City, Mo., was on brief, for plaintiff-appellant.

Walter S. Drusch, Drusch & Dillard, Cape Girardeau, Mo., was on brief, for defendants-appellees.

Before INGRAHAM, LARSON and PECK, Judges.

PECK, Judge.

Appellant, an owner-operator of a gasoline service station, commenced this action against appellee, a reseller-retailer of petroleum products, pursuant to the Economic Stabilization Act of 1970, as amended (ESA), 12 U.S.C. § 1904 note (1976 Supp.), and the Emergency Petroleum Allocation Act of 1973, as amended (EPAA), 15 U.S.C. § 751 *et seq.* (1976 Supp.), to recover alleged overcharges on gasoline purchased by appellant from the appellee between January 1, 1974 and January 23, 1976. The dispute in this case arose out of appellee's termination of a $.02 per gallon discount on December 31, 1973, that appellant had received from appellee prior to that date.

After a bench trial, the district court filed Findings of Fact and Conclusions of Law favorable to the appellee, and entered judgment thereon. The court held that the $.02 discount was a competitive discount, which could be validly terminated under both the ESA and its successor, the EPAA. Additionally, the district court found that the appellant had failed to present a claim for refund to the appellee, a condition precedent to recovery under ESA § 210(b). This appeal followed.

■ For the reasons set forth below, we hold that the district court did not err in determining that the appellant did not make a claim for refund, and we affirm on that ground.

The stipulations and evidence offered by the parties and admitted at trial showed that appellant, Bob Dempsey, initially purchased his gasoline from Boring Oil Company (Boring). On or about November 1, 1971, he terminated his contract with Boring and began purchasing gasoline from Gulf Oil Company (Gulf). Gulf granted Dempsey a $.02 per gallon discount, as well as other consideration, to lure him away from Boring.

Sometime prior to August 15, 1973, Gulf made a decision to "pull out" of eastern Missouri, where Dempsey's station is located. On that date, defendant-appellee, Rhodes Oil Company (Rhodes), which owned a bulk plant near Dempsey's station, assumed Gulf's obligations under the contract and supplied Dempsey with gasoline thereafter until January 23, 1976.

On December 31, 1973, four months after appellee commenced supplying gasoline to appellant, Rhodes notified Dempsey that it was discontinuing the $.02 discount. Between January 1, 1974 and January 23, 1976, appellant purchased 459,932 gallons of gas from Rhodes at the non-discounted rate.

In July 1975, prior to severing business relations with defendant, Dempsey sent a letter to the Federal Energy Administration (FEA). He asserted that the $.02 per gallon "rent" he had been receiving had been terminated by Rhodes, and asked the FEA to help in determining his rights. The FEA contacted a corporate officer of appellee by phone, related the substance of Dempsey's allegations, and asked Rhodes to respond. In a letter to the FEA, Rhodes' manager stated that the "rent" referred to in Dempsey's letter was a "competitive discount" that was discontinued due to a change in market conditions rendering it no longer necessary. The FEA concluded from its investigation that no violation of its regulations had occurred, and the parties were so informed.

In February 1976, shortly after Dempsey ceased purchasing gasoline from Rhodes, Dempsey sent a letter to Rhodes proposing settlement of a claim that Rhodes apparently was asserting against him. In this letter, appellant made reference to "back rent" that he asserted appellee owed him. This was followed by a letter from appellant's attorney to appellee's attorney. This letter invited Rhodes' attorney to discuss the possibility of settlement of Rhodes' claim and included an assertion that "a substantial amount" was owed by appellee under FEA regulations. The record discloses no further communications between the parties prior to the commencement of this suit.

Plaintiff instituted this action for treble damages in federal district court on November 12, 1976. Fifteen months later, Dempsey's attorney sent a letter to appellee in which he set forth the grounds for objecting to the termination of the discount, the period during which the alleged violation occurred, the quantity of gasoline purchased during that period, and the total amount of the alleged overcharge. The letter concluded with a demand for refund of the overcharge within ninety days.

Section 210(b) of the ESA, which the trial court found appellant had failed to comply with, provides, in part:

> [W]here the overcharge is not willful within the meaning of section 208(a) of this title, no action for an overcharge may be brought by or on behalf of any person unless such person has first presented to the seller or renter a bona fide claim for refund of the overcharge and has not received repayment of such overcharge within ninety days from the date of the presentation of such claim.

Appellant has never asserted that appellee "willfully" violated the Act, and he concedes that ESA § 210(b), therefore, is the applicable law on this issue. *See Manning v. University of Notre Dame Du Lac*, 484 F.2d 501 (Em.App.1973). He contends, however, that "substantial" compliance with § 210 is all that is required. Appellant argues that appellee had sufficient notice of his claim without formal presentment and that the district court therefore erred when it held strict compliance to be the rule. In support of this argument, appellant asserts that the language of § 210(b) is nonspecific, case law provides no guidance with respect to the formalities that must be followed in making a claim, and non-judicial settlement of claims is encouraged, consonant with the congressional intent underlying § 210(b), where a seller receives notice sufficient to apprise him of the general "nature" of a purchaser's claim. Appellant's assertions are not persuasive.

When ESA § 210, which provides for civil actions to recover overcharges and permits the courts to award treble damages, was undergoing congressional scrutiny prior to passage, legislators became concerned that the enactment of this section, as originally proposed, would result in the courts being deluged with frivolous suits. Following debate on the floor of both houses, the proviso of section 210(b) at issue here was added as a procedural hurdle to recovery in an attempt to counteract what Congress perceived to be a "substantial inducement to litigate." 117 Cong.Rec. 43712 (1971) (remarks of Sen. Inouye). In keeping with Congress' intent to avoid "misunderstanding[s]" and consequent litigation, *Id.,* section 210(b) sets forth several explicit requirements as conditions precedent to a

purchaser's right to recover overcharges in an action in federal court: there must be a claim; the claim must be for a refund; it must be presented by the purchaser; and it must be presented to the seller.

With regard to appellant's claimed compliance, he never once sent a letter or even made a phone call demanding that appellee pay the alleged overcharge until almost fifteen months after filing this suit. The legislative history clearly indicates that a demand for repayment is a condition precedent to bringing suit. As this Court recognized in *Longview Refining Co. v. Shore*, 554 F.2d 1006, 1012 (Em.App.1977), "[r]equiring presentation of a bona fide claim for refund of an overcharge is part of the congressional provision of an opportunity and an incentive for nonjudicial settlement." Moreover, we stated very specifically in *Manning v. University of Notre Dame Du Lac*, 484 F.2d 501, 503 (Em.App. 1973), that where a seller has not willfully violated the Act, it is "mandatory" that a purchaser make a "request for refund."

In addition to appellant's failure to make a demand for repayment, he never indicated the amount that he believed he had been overcharged. In *Evans v. Suntreat Growers and Shippers, Inc.*, 531 F.2d 568, 571 (Em.App.1976), this Court held that the inclusion of a "sum certain" is an implicit and necessary element of a claim for refund under section 210(b). The Court there reasoned that the seller is entitled to be apprised of the total overcharge that the buyer is claiming he has suffered. Indeed, if we did not require a purchaser to know and make known the amount of the purported overcharge, the incentive to settle meritorious claims extrajudicially, and the deterrent to filing frivolous suits would be substantially impaired.

We recognize that, on occasion, there may be exceptional circumstances that call for the suspension of the requirement that a sum certain be stated. Where, for example, a seller has information necessary to a determination of the total overcharge, and this information is not available to the buyer, fairness precludes rigid adher-

ence to this rule. Appellant has offered no explanation, however, that would justify waiving the requirement in this case. In fact, appellant's brief discloses conclusively, though perhaps unwittingly, that the information upon which he ultimately relied to compute the alleged overcharge was readily available to him at the time he sent his first letter to the appellee, nine months before he filed suit.

The statute is explicit and the legislative intent clear. Congress placed the responsibility for complying with § 210(b) squarely upon the shoulders of the purchaser, and this Court has consistently required strict compliance with the statute. Appellant's proposed substitution of substantial compliance would have the effect of shifting the focus of the courts from the objective conduct of the purchaser to issues involving a seller's knowledge and state of mind. Such an approach, we conclude, would impose too great a burden upon trial courts to enter into collateral areas of fact in view of the ease with which a purchaser can comply with the express provisions of the Act.

Appellant also argues that filing a "complaint" with the FEA is an alternative means of satisfying the requirements of § 210(b), and, therefore, this suit is saved because he followed that agency's procedures as set forth in EPAA, 10 C.F.R. § 200 *et seq.* for filing a complaint. We need not decide this issue here, for appellant did not comply with the FEA regulations governing procedures for filing a complaint. *See, e. g.,* 10 C.F.R. 205.183 ("[Complaint] shall include a statement describing the regulation, ruling, order or interpretation that allegedly has been violated.").

Alternatively, appellant argues that § 210(b) is jurisdictional. In appellant's view, the district court lacked subject matter jurisdiction to determine the merits of the case once it decided that a proper claim had not been made. Appellant concludes, therefore, that this case must be remanded to the district court with instructions to dismiss the claim without prejudice. Appellant could then proceed to give proper notice to appellee and reinstitute this action if

appellee fails to refund the claimed overcharge within ninety days. The authority that appellant has cited does not support the proposition he advances.

In *Manning v. Notre Dame Du Lac*, 484 F.2d 501, 503–504 (Em.App.1973), relied on by appellant, this Court held that Section 210(a) confers jurisdiction, not 210(b). *See also Lo-Vaca Gathering Co. v. Railroad Commission of Texas*, 565 F.2d 144, 146 (Em.App.1977), *cert. denied*, 434 U.S. 1067, 98 S.Ct. 1245, 55 L.Ed.2d 768 (1978). The *Manning* court stated that compliance with § 210(b) is an "essential condition to recovery" of an overcharge as opposed to a jurisdictional predicate. 484 F.2d at 504. Thus, this Court there upheld the district court's dismissal of the plaintiff's complaint for failure to state a claim upon which relief could be granted, pursuant to Rule 12(b)(6), Fed.R.Civ.P., where no demand for refund had been made or alleged in the complaint. Likewise, the district court in *Thomas v. Amerada Hess Corp.*, 393 F.Supp. 58 (M.D. Pa.1975), dismissed a complaint pursuant to Rule 12(b)(6) rather than for lack of subject matter jurisdiction where no claim for refund was averred in the pleadings. A dismissal under 12(b)(6) is on the merits and with prejudice. See Rule 41(b), Fed.R. Civ.P.

In the case at bar, appellee moved for dismissal of this action pursuant to Rule 12(b)(6) on the morning of trial. Though appellant did not allege in his complaint that a demand for refund had been made, and dismissal would therefore have been proper, the court deferred ruling on the motion to give plaintiff an opportunity to present evidence on the issue. The court subsequently entered judgment for the appellee, holding that it had jurisdiction in the case and finding that appellant had failed to prove an element necessary for recovery; specifically, that a proper demand for refund had not been made.

 We agree with the trial court that it had subject matter jurisdiction. Appellant's argument to the contrary, upon which his request for remand is premised, is without merit.

 Lest the result here seem harsh, we point out that appellant could have sought a voluntary dismissal, without prejudice, prior to trial, pursuant to Rule 41(a), Fed.R.Civ.P. If such dismissal had been available by stipulation or if it had been granted by order of the court, plaintiff could then have made a proper claim for refund, and then filed suit anew. Instead, he chose to proceed to trial and assume the risk of an adverse determination. Appellant will not now be heard to complain of the bitter fruit that has sprung from the seed that he had reason to suspect was faulty, yet chose to sow and rely upon.

For the reasons stated above, the judgment of the district court is AFFIRMED.