INDEPENDENT OIL AND TIRE
CO., Plaintiff,

v.

MARATHON PETROLEUM
COMPANY, Defendant.

Civ. A. No. C82–382.

United States District Court,
N.D. Ohio, E.D.

Dec. 27, 1982.

Richard D. Panza, Lorain, Ohio, William H. Bode, Tobey H. Marzouk, Washington, D.C., for plaintiff.

Robert Kahrl, Cleveland, Ohio, Warren E. Connelly, Washington, D.C., for defendant.

## ORDER

DOWD, District Judge.

Before the Court is the motion of defendant, Marathon Petroleum Company (Marathon), to dismiss the complaint and amended complaint of plaintiff, Independent Oil and Tire Company (Independent), pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim.

### I.

The facts alleged in the complaint must be accepted as true for the purposes of deciding this motion. Between August 19,

1973, and January 28, 1981, the federal government regulated petroleum prices. During that period of time, Independent purchased a large amount of fuel oil, middle distillates and gasoline from Marathon. Independent now charges that Marathon prices on sales were in violation of the relevant federal regulations.

On January 22, 1982, Independent sent a letter to Marathon requesting a refund of over $1.8 million because of these alleged overcharges. Marathon responded to Independent's letter on February 1, 1982, requesting that Independent "specify precisely the respects in which you believe that Marathon failed to comply with the DOE regulations and that such failure resulted in damage." On February 4, 1982, Independent replied by issuing a request to Marathon for information which it believed necessary to further explain its claim. Marathon declined to provide this data by a letter dated February 16, 1982.

Independent filed this suit under § 210 of the Economic Stabilization Act of 1970 (ESA), 12 U.S.C. § 1904, et seq. and § 5(a)(1) of the Emergency Petroleum Allocation Act of 1973 (EPAA), 15 U.S.C. § 754[1] on February 17, 1982.[2] Independent subsequently amended its original complaint on April 26, 1982. As amended, Independent's complaint alleges three counts against Marathon.[3] Count 1 of Independent's amended complaint seeks damages for overcharges arising out of Marathon's unintentional violations of the federal energy regulations. The second count of the amended complaint seeks damages for "willful" overcharges by Marathon. Finally, the third count of Independent's claim seeks treble damages based on "intentional" overcharges that were "not the result of *bona fide* error." Independent's amended complaint also seeks compound interest on the amount of any monetary judgment, reasonable attorney's fees, and the cost of this action.

This case is now before the Court on the motion of Marathon to dismiss the action for failure to state a claim. With respect to Count 1 of the amended complaint, Marathon seeks dismissal based on statute of limitations grounds and Independent's failure to comply with the procedural requirements for bringing a private right of action under § 210 of the ESA. With respect to Counts 2 and 3 of the amended complaint, Marathon's motion to dismiss is based solely on statute of limitations grounds. For the reasons stated below, the Court denies the motions to dismiss.

II.

The first basis advanced by Marathon for dismissing Count 1 of Independent's claim alleging unintentional violation of the ESA is Independent's failure to comply with the procedural requirements for bringing a private right of action under § 210(b) of the ESA.[4] That section provides, in relevant

---

1. The statutory framework underlying this claim reflects the interplay between the ESA and the EPAA. In the interest of clarity, all statutory references in this opinion are to the ESA.

2. Section 210(a) of the ESA creates a private right of action. That statute provides:
   "Any person suffering legal wrong because of any act or practice arising out of this title, or any order or regulation issued pursuant thereto, may bring an action in a district court of the United States, without regard to the amount in controversy, for appropriate relief, including an action for a declaratory judgment, writ of injunction (subject to the limitations in section 211), and/or damages."

3. Counts 1 and 2 of the original complaint are repeated as Counts 2 and 3 of the amended complaint. For the purposes of this order, the Court's references to the various counts of the complaint will always be to the numbers contained in the amended complaint, the argument raised in support of its motion to dismiss the original complaint will be incorporated by reference to this decision.

4. That section provides:
   "In any action brought under subsection (a) against any person renting property or selling goods or services who is found to have overcharged the plaintiff, the court may, in its discretion, award the plaintiff reasonable attorney's fees and costs, plus whichever of the following sums is greater:
   '(1) an amount not more than three times the amount of the overcharge upon which the action is based, or
   '(2) not less than $100 or more than $1,000;

part, that "no action for an overcharge may be brought by or on behalf of any person unless such person has first presented to the seller . . . a *bona fide* claim for refund of the overcharge *and* has not received repayment of such overcharge within 90 days from the date of the presentation of such claim." ESA § 210(b)(2) (emphasis added). Marathon claims that Independent has failed to comply with either of these procedural prerequisites to suit. The Court will address each of these contentions separately.

### A.

Section 210(b)(2) requires that a purchaser present a "*bona fide* claim for refund of the overcharge" to the seller as a prerequisite to a judicial action. Marathon does not deny that it received a claim for refund from Independent on January 22, 1982. It

> except that in any case where the defendant establishes that the overcharge was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to the avoidance of such error the liability of the defendant shall be limited to the amount of the overcharge: Provided, that where the overcharge is not willful within the meaning of section 208(a) of this title, no action for an overcharge may be brought by or on behalf of any person unless such person has first presented to the seller or renter a bona fide claim for refund of the overcharge and has not received repayment of such overcharge within ninety days from the date of the presentation of such claim."

5. The full text of the January 22, 1982, letter from Independent's counsel to Marathon is:
> "We have been retained by Independent Oil and Tire Co. ("Independent") to review compliance by your company with the Mandatory Petroleum Price Regulations, 10 C.F.R., Part 212, Subpart E ("Price Regulations"); in sales of motor gasoline, fuel oil, and middle distillates made by Marathon Oil Company ("Marathon") to Independent during the period between August 19, 1973, and January 27, 1981. Based upon this review on behalf of Independent, we hereby request a refund of price overcharges with respect to such sales, pursuant to Section 210 of the Economic Stabilization Act of 1970, as incorporated into Section 5(a) of the Emergency Petroleum Allocation Act of 1973.
> The basis for this claim is Marathon's failure to comply with the Price Regulations in

contends, however, that the letter [5] does not constitute a *bona fide* claim.

Before turning to the case law on the requirement of a *bona fide* claim for refund, the Court must examine the legislative intent behind § 210. In two recent decisions, the Temporary Emergency Court of Appeals (TECA) [6] has examined the legislative history behind the Congressional enactment of the private right of action and the requirement of a *bona fide* claim. See *Bulzan v. Atlantic Richfield Company*, 620 F.2d 278 (TECA 1980); *Dempsey v. Rhodes Oil Company*, 620 F.2d 274 (TECA 1980). In *Bulzan*, the Court noted the Congressional intent to create a private right of action as a means for deterring violations of the statute, 620 F.2d at 282. At the same time Congress enacted the *bona fide* claim requirement in hopes of avoiding unnecessary litigation. Congress hoped that the filing

> establishing its selling prices of motor gasoline to Independent. Specifically, we are of the opinion that Marathon failed to charge prices which reflected its actual May 15, 1973, selling prices in appropriate transactions with the class of purchaser in which Independent belongs, and that Marathon failed to determine its increased costs in the manner required by the refiner's price formula set forth in 10 C.F.R. § 212.83.
> During the period between August 19, 1973, and January 27, 1981, Independent purchased from Marathon approximately 48,-747,281 gallons of motor gasoline. During the period between August 19, 1973, and June 30, 1976, Independent purchased from Marathon approximately 14,093,449 gallons of fuel oil and middle distillates. The prices which Independent paid for motor gasoline, fuel oil and middle distillates during these periods exceeded Marathon's maximum lawful prices by amounts which averaged not less than 3.0 cents per gallon. Therefore, Independent hereby requests a refund in the amount of $1,462,418.43 for motor gasoline, and $422,803.47 for fuel oil and middle distillates.
> Please contact the undersigned as soon as possible regarding the procedures to effect this refund."

6. TECA is vested with "exclusive jurisdiction of all appeals from the district courts of the United States in cases and controversies arising under this title or under regulations or orders issued thereunder." § 211(b)(2).

of claims for refund before litigation would both deter the filing of frivolous suits and encourage the speedy resolution of meritorious claims. *Dempsey v. Rhodes Oil Company,* 620 F.2d at 276–77 (TECA 1980). This legislative history suggests the problem which faces this Court in defining the parameters of the *bona fide* claim requirement. The Court's decision must preserve the requirement for filing a meaningful claim for refund to serve as a vehicle for encouraging nonjudicial resolution of these cases. The decision may not, however, impose additional obstacles to plaintiffs seeking to enforce the regulations through the private right of action.

*Dempsey v. Rhodes Oil Company,* 620 F.2d 274, is TECA's most recent and complete discussion of the requirements for a *bona fide* claim. In *Dempsey,* TECA affirmed a lower court judgment for the defendants in a suit brought under § 210 based on plaintiff's failure to comply with the *bona fide* claim requirement. Plaintiffs did not present a claim for refund to the defendant until 15 months after the filing of their lawsuit. In place of this letter of claim, plaintiffs contended that they had met the requirement of § 210(b) by sending a letter to the Federal Energy Administration asserting their claim and by the FEA's communication of that claim to the defendant. TECA rejected this claim of "substantial compliance" with § 210(b), stating that the Court would not assume the added burden created by allowing a "shifting of the focus of the courts from the objective conduct of the purchaser to issues involving a seller's knowledge and state of mind." *Id.* at 277. The Court noted that the statute "sets forth several explicit requirements as conditions precedent to a purchaser's right to recover overcharges in an action in federal court: there must be a claim; the claim must be for a refund; it must be presented by the purchaser; and it must be presented to the seller." *Id.* at 276–77. Citing *Evans v. Suntreat Growers and Shippers, Inc.,* 531 F.2d 568, 571 (TECA 1976), the Court further implied that the claim for repayment must also allege a sum certain. 620 F.2d at 277. The Court expressed its willingness,

however, to suspend the requirement of a sum certain where the information was not available to the buyer. *Id.*

The question remains, however, whether TECA will impose further requirements for a *bona fide* claim for refund. As noted in Marathon's reply brief, the Court's discussion of the elements of a *bona fide* claim in *Dempsey* is essentially dicta. *Dempsey* involved a situation where the plaintiffs had completely failed to present a claim for refund to the seller. The Court, therefore, did not address fully all of the requirements that it might impose for a *bona fide* claim should one be presented to the seller.

In this case, Marathon urges the Court to impose further requirements beyond those stated in *Dempsey* for a *bona fide* claim for refund. At the outset, the Court notes that the elements of a *bona fide* claim set out in *Dempsey* would be required under a statute which required nothing more than a claim for refund. By inserting the words *bona fide* in the statute, Congress apparently was suggesting the need for something more.

Marathon suggests two additional requirements for a *bona fide* claim. Initially, Marathon urges the Court to require a greater degree of specificity in the statement of the claim for refund than that provided by Independent. Alternatively, Marathon would require that the claim for relief indicate a "good faith" basis for asserting the claim. In either case, Marathon believes that Independent's claim for refund does not meet the proposed standard for a *bona fide* claim.

Marathon asserts that Independent's claim was not sufficiently specific to qualify as a *bona fide* claim for refund. While Marathon cites *Dempsey*'s statement that "this Court has consistently required strict compliance with the [procedural requirements of the] statute," 620 F.2d at 277, Marathon has failed to cite any authority which requires more specific information to be included in a *bona fide* claim. It argues that Independent's claim failed to present any "meaningful basis for its assertion that Marathon overcharged Independent." Mo-

tion to Dismiss Amended Complaint at 7. In its place, Marathon asserts that Independent's claim for refund contained only generalized boilerplate which did not indicate the basis for Independent's claim.[7] As a result, Marathon had no basis upon which it could even evaluate Independent's claims, much less attempt to settle the dispute in accordance with Congress' purpose in enacting the *bona fide* claim requirement. *Id.* Marathon, therefore, requests the Court to find that Independent's claim for refund did not meet the requirements for a *bona fide* claim for refund.

In response, Independent argues that its claim for refund meets the standards set out in *Dempsey.* Independent argues that its January 22, 1982, letter "plainly met the objective criteria established in *Dempsey* —it was (1) a claim for (2) refund (3) presented by Independent (4) to Marathon (5) for a sum certain." Memorandum in Opposition to Defendant's Motions to Dismiss Complaint and Amended Complaint at 10. Further, Independent argues that any addition to the requirement for a *bona fide* claim for refund set out in *Dempsey* would run counter to Congress' purpose in creating a private right of action for enforcement of these claims. Finally, Independent cites two recent district court opinions in which letters similar to the one presented in this case were found sufficient to make out a *bona fide* claim. See *Kocolene Oil Corp. v. Ashland Oil Corp.,* 517 F.Supp. 1029 (S.D. Ohio 1981); *Naph-Sol Refining Co. v. Murphy Oil Corp.,* Civil No. G79–14CA6 (W.D. Mich., Oct. 9, 1980).[8]

Upon its review of the authorities cited by both parties, the Court finds that Independent's claim is sufficiently specific to qualify as a *bona fide* claim. As noted in Marathon's motion, this type of lawsuit involves a complicated body of law and a

significant factual analysis. To require plaintiffs to state with specificity the legal theory upon which they base their claim at the initial stage of this litigation, at the initial filing of the claim for refund, would place a very significant obstacle to the maintenance of this type of claim. In light of the relevant legislative history suggesting Congress' intent to encourage these private rights of action, the Court finds that it would be inappropriate to impose this additional procedural hurdle to plaintiffs' pursuit of their private right of action.

Marathon next urges that a requirement of "good faith" be included within the elements of a *bona fide* claim for refund. In support of this position, Marathon cites the recent opinion in *U.S. Oil, Inc. v. Koch Refining Company,* 497 F.Supp. 1125 (E.D. Wis.1980). In *U.S. Oil,* the Court found that:

> To be *bona fide,* the Court finds that the claim must have been made in good faith. That is, the plaintiff must have a genuine belief that it was overcharged and it must have based its demand for refund on some objective calculation of the overcharge amount. Merely haphazardly selecting a three cent a gallon overcharge average would not constitute good faith. Furthermore, the Court finds that the plaintiff's failure to respond to the defendant's request for information raises an issue for trial as to whether the plaintiff's claim, which met the requirements of § 210(b) as to form, was made in good faith.

*Id.* at 1133.

In this case, Marathon cites two examples of Independent's alleged lack of good faith. Marathon contends that Independent's claim letter showed a "genuine belief that it was overcharged and ... based its de-

---

**7.** In connection with this allegation, counsel for Marathon found it necessary to make repeated references in their briefs to opposing counsel's experience in handling these types of cases. These references, apparently, were intended to create an inference of bad faith on the part of Independent. The Court disregards those references. Furthermore, the Court finds nothing

improper in the alleged conduct of Independent's counsel.

**8.** Neither of these opinions presents a significant analysis of the issues raised by Marathon's motions. Also, as shown in Marathon's memoranda, the facts of these cases are somewhat distinguishable from the case currently before the Court.

mand for a refund on some objective calculation of the overcharged amount." Motion to Dismiss Amended Complaint at 8 (quoting *U.S. Oil*). Instead, Independent submitted a generalized letter that Marathon alleges is nothing more than boilerplate. Further, Marathon alleges that Independent's failure to pursue additional information through the February, 1982, correspondence indicates the absence of good faith.

Independent's response to this argument takes two forms. Independent argues that *U.S. Oil* was improperly decided, that there should not be a requirement of "good faith" read into the definition of a *bona fide* claim. Alternatively, Independent argues that it has met any test of good faith which might be imposed.

Independent's argument against the imposition of a "good faith" test has two elements. Initially, Independent argues that any consideration of state of mind is foreclosed by *Dempsey*. In *Dempsey*, the Court rejected plaintiff's contention that defendant's awareness of the elements of plaintiff's claim was sufficient to meet the requirement for a "good faith" claim for refund. *Dempsey v. Rhodes Oil Company*, 620 F.2d 274, 276–77 (TECA 1980). Independent argues that on the basis of the decision in *Dempsey*, the requirement of a *bona fide* claim is to be evaluated only on the basis of the objective conduct of the purchaser. *Id.*

*Dempsey*, however, is distinguishable from the argument presented by Marathon. In *Dempsey* the Court rejected an argument that *defendant's* state of mind could substitute for a *bona fide* claim. In this case, Marathon is arguing that plaintiff's state of mind negates an otherwise *bona fide* claim. The Court, therefore, finds that *Dempsey* does not foreclose consideration of Independent's state of mind.

Independent's second argument against the imposition of a "good faith" test draws again on the legislative intent of Congress in enacting § 210. As noted above, Congress set a balance between plaintiffs and defendants in these actions by both creating a private right of action and by enacting these procedural prerequisites to judicial suit. The Court finds that a requirement of "good faith" would present a new and substantial obstacle to plaintiffs in these cases, and would therefore upset the balance created by Congress. The Court, therefore, rejects Marathon's suggestion that it impose an additional "good faith" test.

### B.

■ Marathon's next argument for seeking dismissal is the assertion that Independent failed to comply with the 90-day waiting period required between the filing of a claim for refund alleging an unintentional violation of a statute and the filing of a law suit seeking enforcement of the statute. The facts relating to this issue are not in dispute. Independent sent its claim for refund to Marathon on January 22, 1982. On February 17, 1982, 26 days after it filed its claim for refund, Independent filed its original complaint alleging willful and intentional violations. Independent filed its amended complaint alleging unintentional violation of the ESA on April 26, 1982, after the 90-day waiting period had elapsed.

Marathon now charges that this set of facts constitute a violation of the 90-day waiting period contained in § 210(b).[9] Marathon argues that, for the purposes of measuring compliance with the 90-day waiting period, Independent filed its lawsuit on February 17, 1982. Marathon, therefore, asserts that Count 1 of the complaint should be dismissed for failure to comply with the required waiting period. Alternatively, Marathon urges that the Court should recognize the April 26, 1982, filing of the amended complaint as the day on which Count 1 was filed for statute of limitations purposes. In response, Independent argues that it has complied with the letter of the statute and that the only issue which the Court might give serious consideration to is the relation back of Count 1 for statute of limitations purposes.

9. *See* note 4, *supra.*

In support of its position, Marathon cites the general rule that strict compliance with the requirements of proper filing of a claim for refund is mandatory. See *Manning v. University of Notre Dame,* 484 F.2d 501, 504 (TECA, 1973). *Manning,* as well as the other cases cited by Marathon, does not relate to a situation where the plaintiff has complied with the letter of § 210(b). In each of these cases, the plaintiff either completely failed to file a claim for refund or filed that claim on the same date as the filing of the suit asserting unintentional violations of the ESA. These cases, therefore, are distinguishable from the case currently before the Court.

Marathon's argument, therefore, presents an issue of first impression concerning the applicability of "relation back" doctrine to the 90-day waiting period requirement embodied in § 210(b). Neither party has presented any controlling case law on this issue to the Court. At the outset, it is important to note the differing policies served by "relation back" doctrine and the 90-day waiting period. The purpose of the 90-day waiting period is to protect defendants by encouraging settlement in these private actions. See *Dempsey v. Rhodes Oil Company,* 620 F.2d at 276–77. On the other hand, "relation back" doctrine is designed to protect plaintiffs by tolling the statute of limitations. See 6 C. Wright and A. Miller, Fed. Practice and Procedure § 1496 (1971). The analogy sought by Marathon, therefore, is inappropriate. The policy served by the 90-day waiting period is unrelated to the issue of relating back the claim for an unintentional violation. The parties still have 90 days for settlement negotiations between the filing of the claim for refund and the filing of a judicial action. The Court, therefore, holds that an amended complaint does not "relate back" for purposes of measuring the 90-day waiting period.[10]

Accordingly, Marathon's motion to dismiss Count 1 of the amended complaint for failure to comply with the procedural requirements of § 210(b) is denied.

10. The Court reserves judgment on the issue of the applicability of relation back doctrine for

## III.

Marathon next seeks dismissal of Counts 2 and 3 of the amended complaint on statute of limitations grounds. Marathon further asks the Court to bar a portion of Independent's claim under Count 1 on the same basis.

In response, Independent raises two defenses. Independent argues that the doctrine of fraudulent concealment could be invoked to toll the statute of limitations in this case. In addition, Independent disagrees with Marathon's views regarding the applicable statute of limitations and urges the Court to apply a longer limitations period. Because the Court finds the doctrine of fraudulent concealment applicable to this case, the Court need not reach this final argument.

■ ESA does not include its own statute of limitations' provision. As a result, the issue of statute of limitations is governed by an interplay of state and federal law. While the applicable statute of limitations is controlled by state law, "any issue relating to accrual and tolling is governed by federal law." *Ashland Oil Company of California v. Union Oil Company of California,* 567 F.2d 984, 988 (TECA 1977) (citations omitted). The issue of fraudulent concealment, therefore, will be controlled by federal, rather than state, law. *See* 2 Moore's Federal Practice ¶ 3.07[3] (2d ed. 1976).

■ "Merely intoning the word 'fraudulently' is not sufficient to avoid the statute [of limitations]." *Charlotte Telecasters, Inc. v. Jefferson-Pilot Corp.,* 546 F.2d 570–74 (4th Cir.1976). In its consideration of a fraudulent concealment argument in connection with a § 210 lawsuit, the *Ashland Oil* court stated:

Where acts causing injury are fraudulently concealed from the injured party or where fraud furnishing the basis of an action is of such nature as to conceal

statute of limitations purposes.

itself, a statute of limitations is tolled until the injured party discovers, or with due diligence could have discovered, the injury.

567 F.2d at 988 (citations omitted).

See *Fitzgerald v. Seamans,* 553 F.2d 220, 228 (D.C.Cir.1977); *City of Detroit v. Grinnell Corp.,* 495 F.2d 448, 460–461 (2nd Cir. 1974). Under these precedents, in order to make out its claim of fraudulent concealment, Independent Oil must show that (1) Marathon fraudulently concealed material facts relating to this claim, (2) Independent remained unaware of these material facts, and (3) Independent exercised due diligence in discovering these facts.

■ On this motion to dismiss, the allegations in Independent's amended complaint must be accepted as true. These allegations are:

Marathon has fraudulently concealed from Independent Marathon's violations of the Price Regulations, thereby causing Independent to incur overcharges for the motor gasoline, fuel oil and middle distillates it had purchased from Marathon and to suffer other consequential and incidental damages to its business. During the period of Marathon's violations of the Price Regulations, Independent was unaware of the basis for the high prices it was being charged by Marathon. Marathon had sole possession of the pricing data necessary to show that its prices and discriminatory practices violated the Price Regulations. At all times relevant to this complaint, Independent exercised due diligence in attempting to ascertain the reason for these high prices, as demonstrated by Independent's persistent inquiries to Marathon officials on the matter. Specifically, in nearly every month during the period 1973 through 1976, Ronald F. Schilke of Independent complained to various Marathon officials, including Richard Barber, Sales Representative of Marathon, regarding Marathon's inordinately excessive prices and sought an explanation from them as to why Marathon's prices were so high. In response to these inquiries, Marathon officials

fraudulently concealed and misrepresented the reasons for Marathon's high prices and concealed the fact that Marathon's excessive prices resulted from Marathon's violations of the Price Regulations. Instead of truthfully explaining to Independent the reasons for Marathon's extraordinarily high prices, the Marathon officials fraudulently claimed that Marathon was merely passing on its increased cost of product to its customers. Thereafter, during the period 1977 through 1980, Independent continued to exercise due diligence by persistently complaining about Marathon's high prices and inquiring as to the basis for such prices. Marathon, however, repeatedly rebuffed Independent's inquiries, thereby fraudulently concealing Marathon's violation of the Price Regulations.

Amended Complaint at ¶ 12.

Relying on the decision in *Ashland Oil,* Marathon suggests two deficiencies in Independent's allegation of fraudulent concealment. Marathon argues that Independent has not alleged sufficient facts to show that Marathon concealed the material facts supporting this case of action. Alternatively, Marathon argues that Independent was aware of the material facts giving rise to this claim long before it filed this lawsuit. The Court rejects both of these contentions.

Marathon cites *Ashland Oil* as authority for its view that Independent has not alleged sufficient activities on the part of Marathon to make out a case of fraudulent concealment. In *Ashland Oil,* the Court rejected a plaintiff's claim of fraudulent concealment based on the fact that the information giving rise to the claim was not "self-revealing." The Court would not find fraudulent concealment where the defendant had not made available price information that it was not otherwise required to publish. 567 F.2d at 988. Interpreting *Ashland Oil,* one district court refused to accept an allegation of fraudulent concealment where the plaintiffs in a § 210 action "alleged no act committed by any one or all of the defendants which would have in any way prevented the exercise or concealed the

existence of the rights of the plaintiffs," *Small v. Signal L.P. Gas, Inc.,* 548 F.Supp. 46, 49 (E.D.Mo.1982). Marathon, therefore, urges the Court to extend this principal to Independent's claim.

The Court finds the case before the Court distinguishable from these precedents. In this case, we have allegations that Marathon "fraudulently concealed and misrepresented the reasons for Marathon's high prices and concealed the fact that Marathon's excessive prices resulted from Marathon's violations of the price regulation." The Court believes that this allegation of active concealment distinguishes this case from the omissions involved in *Ashland Oil* and *Small.*

Marathon next contends that Independent was aware of the material facts relating to this claim as early as 1973 or 1974. As noted in its allegation of fraudulent concealment in the amended complaint, Independent's officials made inquiries regarding Marathon's prices throughout the period that is the subject of this lawsuit. Independent further alleges, however, that Marathon repeatedly advised Independent that its price increases were the result of statutorily authorized "pass-ons" of increased costs. Marathon, regardless, argues that Independent should have filed a lawsuit or brought an administrative complaint at this early stage. The Court rejects this contention. To find otherwise would only serve to encourage premature litigation of these actions and to clog the courts' and counsels' dockets with claims that will never develop.

Based on this analysis, the Court concludes that Independent's allegation of fraudulent concealment is sufficient to survive Marathon's motion to dismiss. Marathon's motion to dismiss the amended complaint on statute of limitations grounds, therefore, is denied at this time.

### IV.

Accordingly, the motion to dismiss the complaint and the amended complaint is denied.

IT IS SO ORDERED.