**STATE OF MINNESOTA, by its Attorney General, Hubert H. HUMPHREY, III, and State of New York, by its Attorney General, Robert Abrams, and its Energy Commissioner, James L. Larocca, Plaintiffs,**

v.

**STANDARD OIL COMPANY, (INDIANA), Defendant.**

**Civ. No. 4–80–461.**

United States District Court, D. Minnesota, Fourth Division.

July 29, 1983.

Jerome L. Getz, Deputy Atty. Gen., St. Paul, Minn., for plaintiffs State of Minn.

Stanley B. Klimberg, Albany, N.Y., Kenneth Robinson, Asst. Atty. Gen., New York City, for plaintiff State of N.Y. and its Energy Com'r.

Dale I. Larson, Minneapolis, Minn., Thomas Gottschalk and Stephen Herman, Kirland & Ellis, Washington, D.C., M.J.H. Keating, Chicago, Ill., for defendant.

## MEMORANDUM ORDER

MAGNUSON, District Judge.

A hearing was held before the undersigned on the motion of defendant Standard Oil Company of Indiana for dismissal of the complaint of plaintiffs State of Minnesota and State of New York, pursuant to Fed.R. Civ.P. 12(b)(1) and 12(b)(6).

Jerome L. Getz, Deputy Attorney General for the State of Minnesota, and Brad Engdahl, Special Assistant Attorney General for the State of Minnesota, appeared on behalf of the plaintiffs. Thomas Gottschalk, Esq., Dale Larson, Esq., David G. Norrell, Esq., and Paula Clayton, Esq., appeared on behalf of the defendant.

This action initially began on September 5, 1980, upon the filing of a four-count civil action against Standard Oil Company of Indiana (Standard) and the U.S. Department of Energy (DOE) by the State of Minnesota and the State of New York. Count I of the complaint alleges that Standard failed to comply with federal petroleum price and allocation regulations, thereby overcharging plaintiffs for petroleum products. Counts II–IV allege that Standard and DOE entered into an unlawful settlement of DOE enforcement disputes. Upon a motion by defendants, Counts II–IV were dismissed by order of the court. *State of Minnesota v. Standard Oil Co.,* 516 F.Supp. 682 (D.Minn.1981).

Subsequently, defendant Standard moved to dismiss Count I of the complaint, pursu-

ant to Fed.R.Civ.P. 12(b)(1) and 12(b)(6). Numerous briefs were submitted, and the motion heard on February 26, 1982; the matter was then taken under advisement. Since that time, plaintiff Minnesota has amended its complaint, to which Standard has renewed its motion to dismiss, and both plaintiff Minnesota and defendant Standard have submitted supplemental briefs and materials. Furthermore, plaintiff States and defendant DOE have stipulated and agreed that plaintiffs would dismiss their actions against DOE and its officials, Standard Oil thus remaining as the sole defendant in this action. See "Stipulation and Order dismissing U.S. Department of Energy, Donald P. Hodel and Milton Lorenz as Defendants," April 21, 1983, in this case.

## THE COMPLAINT

Plaintiffs Minnesota and New York bring a civil action against defendant Standard for alleged violations of the Phase IV Petroleum Price Regulations, 6 C.F.R. Part 150, Subpart L. This action is brought pursuant to section 210 of the Economic Stabilization Act of 1970, as amended (ESA), 12 U.S.C. § 1904 (note), as incorporated by reference in the Emergency Petroleum Allocation Act, 15 U.S.C. § 754(a)(1).

Plaintiff New York brings its action on behalf of both the State and its political subdivisions who, in their proprietary capacity, were allegedly overcharged in purchases from Standard in violation of the applicable petroleum price regulations. New York further seeks recovery as parens patriae, on behalf of State citizens allegedly overcharged by Standard. In both instances, New York seeks recovery from Standard for alleged overcharges in direct purchases from Standard and in purchases of Standard products from sellers other than Standard. New York seeks recovery of overcharges and damages authorized under ESA § 210 for alleged overcharges occurring from March 6, 1973, through December 31, 1979.

Plaintiff Minnesota seeks similar recovery on behalf of itself, its political subdivisions, and its citizens. Additionally, Minnesota seeks recovery for alleged injury to general interests of the State caused by the alleged overcharges. Furthermore, as authorized by ESA § 210(b), Minnesota seeks treble damages and recovery of attorneys' fees and costs for alleged intentional overcharges made by Standard. Minnesota seeks recovery for alleged non-willful overcharges for the period March 6, 1973, through December 31, 1979, and for alleged intentional overcharges from March 6, 1973, through the present.

## DISCUSSION

Although defendant Standard has not objected to plaintiff Minnesota's amendment of its complaint, the court will comment upon the pleadings.

Plaintiff Minnesota may, as a matter of right, amend its pleading. Fed.R. Civ.P. 15(a) states, "[a] party may amend its pleading once as a matter of course at any time before a responsive pleading is served." A motion to dismiss is not a responsive pleading, within the meaning of Rule 15. See 3 J. Moore, Moore's Federal Practice ¶ 15.07[2] (2d ed. 1983). Although a motion to dismiss has been made, if the motion has not yet been granted, a pleading may be amended. St. Michael's Convalescent Hospital v. State of California, 643 F.2d 1369 (9th Cir.1981).

In the case at hand, Standard has not yet served a responsive pleading to plaintiffs' complaint. Further, Minnesota amended its complaint prior to a determination by the court on Standard's motion to dismiss. Consequently, Minnesota may amend its pleading as a matter of right. Minnesota's complaint, then, is that embodied in its amended pleading, while that of plaintiff New York remains embodied in the original pleading.

Defendant Standard moves for dismissal of plaintiffs' complaints on five grounds. First, Standard asserts that plaintiff New York's complaint should be dismissed for that State's having failed to present Standard with a bona fide claim for refund before initiation of the present action, as required by the ESA. Standard moves for

dismissal of Minnesota's claims of non-willful overcharges on similar grounds.

Second, Standard maintains that Minnesota's claims for intentional overcharges should be dismissed for having failed to meet the ESA's requirements for commencement of an intentional overcharge action.

Third, Standard claims that neither Minnesota nor New York has legal authority to bring this action and recover damages on behalf of its citizens.

Fourth, Standard argues that under the ESA, plaintiff States may not attempt to recover from Standard for alleged overcharges which arose in purchases of Standard products made from sellers other than Standard.

Finally, Standard claims that plaintiff States' statutes of limitations significantly bar recovery of the alleged overcharges.

These five grounds will now be considered.

I. *Bona Fide Refund Claim Requirement*

ESA § 210(b) provides that where an overcharge

> is not willful within the meaning of section 208(a) of this title, no action for an overcharge may be brought by or on behalf of any person unless such person has first presented to the seller or renter a bona fide claim for refund of the overcharge and has not received repayment of such overcharge within ninety days from the date of the presentation of such claim.

Plaintiff New York fails to meet this requirement. Consequently, its complaint must be dismissed. Plaintiff Minnesota's claims of non-willful overcharges meet this requirement only in part. Accordingly, Minnesota's claims of non-willful overcharges are partially dismissed.

New York does not assert a willful violation of the ESA by Standard. Therefore, a bona fide claim for refund is a condition precedent to an action for alleged overcharges under ESA § 210. *Manning v. University of Notre Dame Du Lac,* 484 F.2d 501, 503–504 (TECA 1973). New York, however, has not fulfilled this requirement. Although New York presented Standard with a claim for refund, the claim was postmarked three days after New York filed its complaint. Furthermore, New York failed to allow Standard ninety days in which to make repayment of overcharges, as prescribed by the ESA.

New York does not contest this. Rather, it maintains that it should be excepted from the claim requirement. New York asserts that since Standard did not respond to Minnesota's claim for repayment, any claim by New York for repayment would be futile. Consequently, the requirement should be waived.

■ Plaintiff New York correctly notes that no court has dealt with a question of this exact nature before. However, the Temporary Emergency Court of Appeals (TECA), created in ESA § 211(b)(1) to function as a circuit court of appeals with respect to the ESA, has consistently required strict compliance with ESA § 210(b). Where a seller has not willfully violated the ESA, the court has held that a purchaser's request for refund of overcharges is mandatory. *Id.* at 503. Substantial compliance with § 210 is not sufficient; strict compliance is required. *Dempsey v. Rhodes Oil Co.,* 620 F.2d 274, 276–277 (TECA 1980). Moreover, the court has stated that the ESA "does not excuse failure to present a claim for refund simply on a conclusion that it would have been futile." *Longview Refining Co. v. Shore,* 554 F.2d 1006, 1012 n. 17 (TECA 1977), *cert. denied,* 434 U.S. 836, 98 S.Ct. 126, 54 L.Ed.2d 98 (1977).

■ New York does not challenge or distinguish these cases, nor does it present authority which directly supports its proposition that the claim requirement be waived. Instead, it purports to find an analogy in an exception to the doctrine of the exhaustion of administrative remedies. Cases which New York cites, however, are neither on point nor do they run counter to the findings of TECA. They reflect, at best, exceptions due to urgent or extreme

circumstances, neither of which is present in the instant action. As a result, New York fails to establish a basis for waiver of the claim request requirement.

Having thus failed to meet the condition precedent in § 210(b), and failing to establish an exception to the claim request requirement, plaintiff New York's complaint is dismissed in its entirety.

█ Unlike New York, plaintiff Minnesota has met the refund claim time requirement of § 210(b): Minnesota did not file its complaint until approximately six months after having made its refund claim. There is some question, however, whether Minnesota's overcharge refund request is a "bona fide claim for refund," as required by § 210(b). This court holds that plaintiff Minnesota's refund claim is sufficient, in part, to avoid dismissal of the State's complaint upon a Rule 12(b)(6) motion, and that Minnesota should have the opportunity to attempt to prove that its refund claim meets the requirements of the ESA.

The legislative history surrounding the ESA indicates two intents behind § 210. First, the availability of a private means of redress for overcharges, as provided in § 210, was intended to encourage private parties to come forth with complaints, supplementing governmental enforcement and providing a strong deterrent to would-be violators. *Bulzan v. Atlantic Richfield Co.,* 620 F.2d 278, 282 (TECA 1980), citing H.R. Rep. No. 92–714, 92nd Cong., 1st Sess. (1971), Senate Rep. No. 92–507, 92nd Cong., 1st Sess. (1971), U.S.Code Cong. & Admin. News, p. 2283. At the same time, legislators wished to prevent a deluge of frivolous suits. To this end, Congress required an aggrieved party to make a bona fide claim for refund, thereby counteracting what Congress perceived to be a "substantial inducement to litigate". *Dempsey v. Rhodes Oil,* 620 F.2d at 276, quoting remarks of Sen. Inouye, 117 Cong.Rec. 43712 (1971). Any interpretation of the bona fide claim requirement, then, must preserve access to § 210, and yet present the opening of what have been termed the floodgates of litigation.

Defendant correctly refers to *Dempsey v. Rhodes Oil* as setting the standard for a bona fide claim for refund. In its analysis of § 210(b), the *Dempsey* court isolated five requirements for a refund claim: there must be a claim; the claim must be for a refund; the claim must be presented to the seller; it must be presented by the purchaser; and it must express a "sum certain" which the buyer has been overcharged. 620 F.2d at 276–77. Later cases advocate a further requirement of good faith, although some courts reject such an approach. *See U.S. Oil, Inc. v. Koch Refining Co.,* 497 F.Supp. 1125, 1133 (E.D.Wisc.1980); *but see Independent Oil and Tire v. Marathon Petroleum Co.,* 555 F.Supp. 633 (N.D.Ohio 1982).

Standard does not contest that Minnesota has fulfilled the first three *Dempsey* requirements. Minnesota did make a refund claim. The claim was for a refund of overcharges. And Minnesota presented its claim to the seller.

However, Standard correctly notes that Minnesota meets the fourth *Dempsey* requirement, presentation of a refund claim by the purchaser, only in part. Although Minnesota presented Standard with a refund claim on behalf of itself as purchaser, the State did not make a sufficient claim on behalf of its political subdivisions. First, it is uncertain whether Minnesota is authorized to present a claim on behalf of its political subdivisions, as the State has attempted to do here. Even assuming this authority is present, Minnesota's refund claim makes no mention of State political subdivisions. Standard, therefore, could not be expected to have been put on notice regarding the claim of the political subdivisions, as § 210(b) requires. *See Dempsey,* 620 F.2d at 276–77. Minnesota's assertion that explicit inclusion of the subdivisions in the refund claim would have led to no different result is of no consequence, as futility is no excuse for nonfulfillment of § 210(b) requirements. *See supra.* Consequently, the court dismisses Minnesota's complaint to

the extent it is brought on behalf of the State's political subdivisions.[1]

Standard further contends that Minnesota's refund claim fails to meet the last *Dempsey* requirement, the expression of a "sum certain." Accordingly, Standard would have the court dismiss the remainder of Minnesota's claim of nonwillful overcharges. The court is not in agreement.

Standard notes that Minnesota has failed to express a "sum certain" in its refund claim. However, TECA has recognized that

> on occasion, there may be exceptional circumstances that call for the suspension of the requirement that a sum certain be stated. Where, *for example,* a seller has information necessary to a determination of the total overcharge, and this information is not available to the buyer, fairness precludes rigid adherence to this rule.

*Id.* at 277 (emphasis added). Standard asserts, with reason, that Minnesota was able to make a determination of the amount of overcharges, although the court notes that this might have been possible only in part and with a good deal of effort. It does not follow, however, that the exceptional circumstances noted in *Dempsey* would not therefore apply.

TECA did not maintain that the particular exception noted in *Dempsey* formed the sole exception to the "sum certain" requirement. To the contrary, the exception noted in *Dempsey* was expressed as an example, and nothing more. If anything is to be gleaned from the exception noted in *Dempsey,* it is that fairness will determine whether exceptional circumstances warranting an exception to the "sum certain" requirement are present. The *Dempsey* court specifically noted that the aggrieved party in that case had ready access to the information necessary to express a "sum certain," and yet failed to make use of it. In the case at hand, Minnesota alleges that it could arrive at a "sum certain" only through a great deal of effort, if at all.

Dismissal of a complaint is justified only when the allegations clearly demonstrate that the pleader does not have a claim. *Thomas W. Garland, Incorporated v. City of St. Louis* 596 F.2d 784 (8th Cir.1979), *cert. denied,* 444 U.S. 899, 100 S.Ct. 208, 62 L.Ed.2d 135 (1979). Given the open nature of the term "exceptional circumstances" in *Dempsey,* it is not clear that Minnesota will not be able to prove itself qualified for an exception to the "sum certain" requirement. The court therefore denies Standard's motion to dismiss Minnesota's complaint to the extent the motion alleges a nonspecific, and hence faulty, refund claim on the part of the State and its individual citizens.

## II. *Intentional Overcharges*

Standard next moves for dismissal of Minnesota's claims of intentional overcharges, for failing to meet what Standard terms the ESA's strict standards required to bring such an action. This court is unable to identify any such standards in the ESA itself, or any persuasive authority in the case law to this effect. Given the liberal reading to be accorded pleadings, the court thus finds that Minnesota's claims of intentional overcharges are sufficient to survive a motion to dismiss.

Nowhere in ESA § 210 does Congress express particular requirements for an action to recover intentional overcharges. While ESA § 210(b) requires a bona fide claim for refund to be made before an action may be brought to recover non-willful overcharges, no such requirements exist in an action for willful overcharges. It is true that § 210(b) uses the word "willful" in its criminal sense. A willful overcharge "must have been made with the specific intention of charging a price which the defendant knew was in excess of the ceiling price allowable under the applicable pricing laws and regulations." *Longview Refining Co. v. Shore,* 554 F.2d at 1014. However, Minnesota alleges such an intent in its complaint. Paragraphs 12 and 21 of the amended complaint allege that Standard

---

1. The sufficiency of the refund claim as it relates to individual Minnesota consumers is considered separately below, in an analysis of the *parens patriae* issue.

failed to comply with applicable price regulations. And paragraphs 17 and 33 allege that the resultant overcharges were intentional, and not the result of error.

Case law interpreting the requirements for pleadings in an action for willful overcharges is split. In *Barr v. WUI/TAS, Inc.,* 66 F.R.D. 109 (S.D.N.Y.1975), the court required only that the plaintiff plead that the overcharge was both willful and illegal. *Id.* at 114. However, in *Prairie States Petroleum Co. v. Sun Co.,* No. 80–C–6826, slip op. at 6 (N.D.Ill., May 22, 1981), the court seems to require a more specific allegation of willfulness. Given the liberal attitude to be extended toward pleadings,[2] the court is not persuaded by *Prairie States Petroleum* and follows instead the line of thought presented in *Barr,* which Minnesota has clearly satisfied.

■ For these reasons, the Court holds that Minnesota's allegations of intentional overcharges are sufficient to withstand Standard's motion to dismiss for inadequacy of the pleadings.

### III. *Parens Patriae Claims*

In addition to its proprietary claims, Minnesota also alleges overcharges as *parens patriae* for Minnesota citizens adversely affected by the overcharges. Neither case law nor the ESA disallows Minnesota's ability to function as *parens patriae;* indeed, the former supports it. Consequently, Minnesota may proceed with its *parens patriae* claims.

"*Parens patriae*" means literally "parent of the country." Black's Law Dictionary 1003 (1979). Originally, the *parens patriae* doctrine allowed the state to represent individuals who were legally unable to do so for themselves. As time went on, however, the meaning of the doctrine changed, and *parens patriae* has become a different and more broad sovereign power.

■ As recently defined by the Supreme Court, the *parens patriae* doctrine allows a state to maintain a legal action where state citizens have been harmed, where the state maintains a quasi-sovereign interest. *Alfred L. Snapp & Son, Inc. v. Puerto Rico,* —— U.S. ——, 102 S.Ct. 3260, 3265–66, 73 L.Ed.2d 995 (1982). A state maintains a quasi-sovereign interest either where the health and well-being of its residents is affected, or where the state works to assure that its residents enjoy the full benefit of federal laws. *Id.* at ——, 102 S.Ct. at 3269–70.

■ Minnesota maintains a quasi-sovereign interest in both these realms. First, Minnesota has a quasi-sovereign interest in protecting the economic health of its citizens. In *Snapp,* the Court recognized that "a state's interests in the health and well-being of its residents extends beyond mere physical interests to economic and commercial interests." *Id.* at ——, 102 S.Ct. at 3270. The Court cited its earlier opinion in *Georgia v. Pennsylvania R. Co.,* 324 U.S. 439, 65 S.Ct. 716, 89 L.Ed. 1051 (1945), in which Georgia alleged that 20 railroads had conspired to fix discriminatory freight rates, in violation of federal antitrust law. The Court allowed Georgia to bring its action as *parens patriae,* finding that

> Georgia as a representative of the public is complaining of a wrong, which if proven, limits the opportunities of her people, shackles her industries, retards her development, and relegates her to an inferior economic position among her sister states. These are matters of grave public concern in which Georgia has an interest apart from that of particular individuals who may be affected. Georgia's interest is not remote; it is immediate.

*Id.* at 451, 65 S.Ct. at 723. Minnesota alleges just such a wrong. Consequently, the State is entitled to bring this action as *parens patriae.*

Defendant cites *Pennsylvania v. New Jersey,* 426 U.S. 660, 96 S.Ct. 2333, 49 L.Ed.2d 124 (1976), in opposition. In that case, the Court denied Pennsylvania's mo-

---

**2.** *See generally* 5 Wright & Miller, Federal Practice and Procedure: Civil § 1357 (1969 & Supp.1983).

tion to file suit as *parens patriae* on behalf of its citizens, to challenge a New Jersey tax on New Jersey-derived income of non-residents. In a five-member opinion, the Court found that Pennsylvania had no quasi-sovereign interest in the matter, and that its suit represented a collectivity of private actions for taxes withheld from private parties. *Id.* at 666, 96 S.Ct. at 2336. However, in *Maryland v. Louisiana,* 451 U.S. 725, 101 S.Ct. 2114, 68 L.Ed.2d 576 (1981), the Court upheld Maryland's *parens patriae* challenge of a Louisiana tax on natural gas. The Court held that a state "may act as the representative of its citizens in original actions where the injury alleged affects the general population of a state in a substantial way." *Id.* at 737, 101 S.Ct. at 2124. As in *Maryland,* Minnesota alleges an economic injury to a large number of its citizens. On the basis of *Maryland,* Minnesota is thus warranted in bringing a *parens patriae* action.

Minnesota also maintains a quasi-sovereign interest in assuring that its residents receive the benefits that flow from participation in the federal system. In *Snapp,* the Court found that a state has the right to bring an action to guarantee that its residents enjoy the full benefit of federal legislation. —— U.S. at ——, 102 S.Ct. at 3269. Hence, the Court held in that case that the Commonwealth of Puerto Rico had *parens patriae* standing to bring a complaint alleging violation of federal acts which worked to guarantee employment benefits. *Id.* at ——, 102 S.Ct. at 3270. *See also Georgia v. Pennsylvania R. Co.,* 324 U.S. at 447–52, 65 S.Ct. at 721–23 (in which Georgia maintained a quasi-sovereign interest in assuring its residents the benefits of federal antitrust legislation); *Maryland v. Louisiana,* 451 U.S. at 737–39, 101 S.Ct. at 2124–25 (in which Maryland maintained a quasi-sovereign interest in securing benefits of the Natural Gas Act for its residents). Similarly, Minnesota maintains a quasi-sovereign interest in assuring its residents the benefits of the ESA.

Furthermore, various courts have noted that individuals with small overcharge claims will not avail themselves of ESA § 210, due to the burden of pursuing an action. *See Stertz v. Gulf Oil Corp.,* 95 F.R.D. 116, 120 (E.D.N.Y.1982); *Barr v. WUI/TAS, Inc.,* 66 F.R.D. at 116. Thus, Minnesota may have added incentive to bring this action as *parens patriae,* to assure its residents the full benefit of the ESA. In so doing, the State is acting within its quasi-sovereign realm.

There is no merit to the argument that cases which approve of *parens patriae* actions, having been brought under the original jurisdiction of the Supreme Court, are inapplicable here. The Court has stated that actions brought under its original jurisdiction may call for special considerations that may not apply to similar actions brought in federal district court. *Snapp,* —— U.S. at ——, 102 S.Ct. at 3267, 3271. Hence, as Minnesota fulfills the requirements for a *parens patriae* action brought before the Supreme Court, it certainly does so for a case being brought before the district court.

Indeed, there is some evidence that the court should defer to a state's analysis of its quasi-sovereign interests in determining whether the state may bring a *parens patriae* action. Mr. Justice Brennan, in a concurrence by four of the eight participating justices in *Snapp,* stated that

[a]s a sovereign entity, a state is entitled to assess its needs, and decide which concerns of its citizens warrant its protection and intervention. I know nothing—except the Constitution or overriding federal law—that might lead a federal court to superimpose its judgment for that of a state with respect to the substantiality or legitimacy of a state's assertion of sovereign interest.

*Id.* at ——, 102 S.Ct. at 3271–72.

Standard also asserts that damages may not be recovered in a *parens patriae* action. However, the court in *Maine v. M/V Tamano,* 357 F.Supp. 1097 (E.D.Maine 1973), found that "there is no merit ... [to the] claim that there can never be a *parens patriae* suit for damages." *Id.* at 1102, quoting *Hawaii v. Standard Oil Co. of Cali-*

*fornia,* 301 F.Supp. 982, 987 (D.Haw.1969) (*rev'd* for alternate reasons, 431 F.2d 1282 (9th Cir.1970), *aff'd,* 405 U.S. 251, 92 S.Ct. 885, 31 L.Ed.2d 184 (1972)). While damages have been limited in *parens patriae* cases, the court has been amenable to awarding damages in cases such as the one at hand.

In *Maryland v. Louisiana,* the Court allowed Maryland to bring a *parens patriae* action for an injunction against Louisiana's imposition of an allegedly illegal tax, and for a refund of tax money which Louisiana had indirectly collected from Maryland residents. 451 U.S. at 739, 101 S.Ct. at 2125. In deciding the action for Maryland, the Court ordered Louisiana to refund to Maryland residents the tax money Louisiana had already collected. *Maryland v. Louisiana,* 452 U.S. 456, 457, 101 S.Ct. 3075, 3076, 69 L.Ed.2d 156 (1981). Minnesota's *parens patriae* claim for refund of alleged individual overcharges and for corresponding damages authorized under the ESA is of the same nature as Maryland's claim for a refund of tax money collected from Maryland citizens. Consequently, Standard's motion to dismiss this claim must be denied.

Nevertheless, the court has placed limits on the types of damages which may be recovered in a *parens patriae* action. In *Hawaii v. Standard Oil Co. of California,* 405 U.S. 251, 92 S.Ct. 885, 31 L.Ed.2d 184, the Court disallowed Hawaii's *parens patriae* claim for injury to its general economy caused by alleged antitrust violations. The Court felt that since relevant antitrust law allowed individual citizens to seek recovery for harm done to their own economic interests, it would be impossible to prevent double recovery were Hawaii allowed to recover damages for harm to its general economy. Such recovery would be permitted only under clear congressional authorization, which was found absent in the applicable law.[3] 405 U.S. at 263–64, 92 S.Ct. at 891–92.

In the case at hand, ESA § 210 allows individuals to seek recovery on behalf of their own interests. Section 210 does not, however, authorize states to recover for harm to state general interests. Consequently, *Hawaii v. Standard Oil* precludes Minnesota from seeking recovery for alleged harm to the general interests of the State. To that extent, Minnesota's *parens patriae* claims are dismissed. Minnesota's claims remain intact, however, to the extent the State seeks recovery of overcharges and other damages as the representative of the individual claims of its residents. *See supra.*

Finally, a *parens patriae* action may properly be brought under ESA § 210. Section 210 does not explicitly preclude a state from bringing a *parens patriae* action, nor does the legislative history suggest that such a result was desired. Although no reported case has dealt with this particular issue, courts have allowed class actions to be brought under § 210. *See Stertz v. Gulf Oil Corp.,* 95 F.R.D. at 120; *Evanson v. Union Oil,* CCH Energy Mgmt. Rptr. ¶ 26,-056 (D.Minn.1976).[4] This suggests a broader basis for § 210, which would favor the bringing of a *parens patriae* action.

Nor does the language of § 210 preclude a *parens patriae* action from being brought. Section 210 requires the plaintiff to have been overcharged; the plaintiff must also make a bona fide claim for refund for nonwillful overcharges. However, when a state acts in its quasi-sovereign capacity in a *parens patriae* action, the state becomes, in effect, the embodiment of its citizens. A harm to the individual citizens becomes an injury to the state, and the state in turn becomes the plaintiff.

Applied to the case at hand, Minnesota, acting in its quasi-sovereign role, has been harmed, and has made the requisite bona fide claim for refund. It thus has the right

---

**3.** It should be noted that Hawaii did not seek recovery as *parens patriae* for harm to the individual interests of its citizens. *Hawaii v. Standard Oil,* 405 U.S. at 255, 92 S.Ct. at 887. Hence, *Hawaii v. Standard Oil* is distinguishable from *Maryland v. Louisiana.*

**4.** These cases effectively reverse the direction of *Arnson v. General Motors Corp.,* 377 F.Supp. 209 (N.D.Ohio 1974), in which class actions were found to be improper under the ESA.

to pursue the present action. Although Standard asserts that allowing Minnesota to make a refund claim on behalf of its residents will discourage extrajudicial settlement of complaints (one of the principal reasons for the refund claim requirement), the court finds no merit to this argument. To the contrary, extrajudicial settlement will merely be shifted from the individual to the State, the inducement to settle out of court remaining.

For the above reasons, Minnesota's *parens patriae* claims are dismissed to the extent they seek recovery for alleged harm to the general interests of the State, apart from alleged harm to individual State residents.

## IV. *Indirect Purchases*

██ Minnesota seeks damages for alleged overcharges in purchases made directly from Standard. The State further seeks damages from Standard for alleged overcharges in purchases of Standard products made from sellers other than Standard, claiming that resellers, overcharged by Standard, passed on overcharges to consumers. While ESA § 210 authorizes actions to be brought for overcharges in direct purchases, it does not authorize suits which are the result of indirect purchases. Hence, Minnesota's claim for recovery of overcharges made in indirect purchases is dismissed.

ESA § 210(b) provides that, among other qualifications, an action may be brought "against any person renting property or selling goods or services who is found to have overcharged the plaintiff." In *Arnson v. General Motors Corp.*, the court interpreted this provision as precluding recovery of overcharges in a private action from anyone but the immediate seller of a good or service. 377 F.Supp. at 211. Attempting to avoid this interpretation, the plaintiff in that case unsuccessfully contended

that ESA § 210(a) [5] provides a separate means of recovery from § 210(b), and allows for an action for indirect overcharges. The court held, however, that § 210(a) is solely jurisdictional, and that § 210(b) provides the sole remedy in a private action for overcharges. *Id.* at 212. *See also Florida Power & Light Co. v. Belcher Oil Co.*, 82 F.R.D. 78 (S.D.Fla.1979); *Citronelle-Mobile Gathering, Inc. v. O'Leary*, 499 F.Supp. 871, 885 n. 8 (S.D.Ala.1980) (citing *Arnson* and *Florida Power*), aff'd, 669 F.2d 717 (TECA 1982), *cert. denied*, —— U.S. ——, 103 S.Ct. 172, 74 L.Ed.2d 141 (1982). TECA has explicitly affirmed this interpretation, stating as settled law that "[o]nly direct purchasers have standing to sue under Section 210." *Stertz v. Gulf Oil Corp.*, 685 F.2d at 1369, n. 3 (citing *Arnson*).

Plaintiff asserts that case law which endorses an expansive view of § 210(a) overturns *Arnson*, and allows recovery for indirect overcharges. In *Griffin v. U.S.*, 537 F.2d 1130 (TECA 1976), the court found that § 210(a) allows an individual who has suffered a legal wrong under the ESA to bring an action, while § 210(b) provides a special remedy for overcharges. Consequently, the court allowed the plaintiff in that case to bring a charge of an illegal taking under subsection (a). Although the court later curtailed *Griffin* to the particular factual situation in that case, *McCulloch Gas Processing v. Canadian Hidrogas*, 577 F.2d 712, 716–17 (TECA 1978), *cert. denied*, 439 U.S. 831, 99 S.Ct. 109, 58 L.Ed.2d 126, the *Griffin* rationale was returned to in *Newman Oil Co. v. Atlantic Richfield Co.*, 597 F.2d 275, 279 (TECA 1979), *cert. denied*, 444 U.S. 842, 100 S.Ct. 84, 62 L.Ed.2d 55 (1979), in which the court allowed a charge of fraud to be brought under § 210(a).

However, while § 210(a) allows actions to be brought for harms other than that expressed in § 210(b), § 210(b) remains the exclusive remedy for overcharges. *Newman Oil*, while returning to the *Griffin* ra-

---

5. ESA § 210(a) states,

Any person suffering legal wrong because of any act or practice arising out of this title, or any order or regulation issued pursuant thereto, may bring an action in a district court of the United States, without regard to the amount in controversy, for appropriate relief, including an action for a declaratory judgment, writ of injunction (subject to the limitations in section 211), and/or damages.

tionale, also cites *Arnson* as support for its holding. *Id.* The cited portion of that case explicitly states that "§ 210(b) provides the substantive remedy for a damage action involving illegal price overcharges on sales of goods, and no other remedy arises solely by reason of subsection (a), which is solely jurisdictional." *Arnson,* 377 F.Supp. at 212. This echoes the view of an earlier case in which TECA found "less than convincing the argument ... that we should overlook the wording of Section 210(b)(2) on the theory that having 'suffered legal wrong' appellant can recover by virtue of Section 210(a)," appellant having failed to meet the requirements of § 210(b). *Manning v. University of Notre Dame Du Lac,* 484 F.2d at 504.

Hence, while the court has permitted actions to be brought under § 210(a), § 210(b) remains the exclusive remedy for overcharges.[6] Furthermore, as has been shown, § 210(b) does not allow actions for indirect overcharges. Consequently, Minnesota has no legal standing under the ESA to bring an action against Standard for alleged overcharges in purchases made from sellers other than Standard. Minnesota's claim for overcharges in indirect purchases is accordingly dismissed.[7]

## V. *Statute of Limitations*

Finally, Standard urges dismissal of Minnesota's claims to the extent the claims are barred by the statute of limitations. Standard contends that a two-year statutory period applies in this case, substantially curtailing Minnesota's cause of action. While the court agrees that a two-year limitations period applies to Minnesota's claims of intentional overcharges, a six-year limitations period is mandated for the State's allegations of non-willful overcharges. The court further finds that Minnesota's claims of in-

tentional overcharges, first asserted in the State's amended complaint, relate back to the State's original complaint for purposes of the statute of limitations.

■ To begin, the court notes that it is proper for it to determine the applicable limitations periods in this case on a motion to dismiss. While the court must, of course, refrain from dismissing any action in which there is a valid factual dispute involving the statute of limitations, it may dismiss those actions which are indisputably beyond the applicable limitations periods. *See Guy v. Swift & Co.,* 612 F.2d 383, 385 (8th Cir. 1980); *see generally* 2A J. Moore, Moore's Federal Practice ¶ 12.10.

■ Minnesota contends that as a sovereign power, it is exempt from the defense of the statute of limitations. The State invokes the doctrine of *nullum tempus occurrit regi*—"time does not run against the king." Black's Law Dictionary 963 (1979). While the court recognizes the general applicability of the *nullum tempus* doctrine, it notes that the Minnesota legislature has waived the use of the doctrine in actions such as the one at hand. Consequently, the court finds that Minnesota is bound by the applicable limitations periods.

The *nullum tempus* doctrine works to exempt the sovereign from operation of laches and statutes of limitations. The basis of the doctrine is the public policy of preserving public rights, revenues and property from injury and loss due to the negligence of public officers. *Guaranty Trust Co. of New York v. United States,* 304 U.S. 126, 132, 58 S.Ct. 785, 788, 82 L.Ed. 1224 (1938). "So complete has been its acceptance that the implied immunity of the domestic 'sovereign,' state or national, has been universally deemed to be an exception to local statutes of limitations where the govern-

---

**6.** *Cf. U.S. Oil Co., Inc. v. Koch Refining Co.,* 497 F.Supp. at 1133 (disallowing recovery of consequential damages in an overcharge action, which plaintiff attempted to recover under § 210(a)).

**7.** Although Minnesota cites a line of cases in which actions for indirect overcharges have

been allowed, those cases were brought under ESA § 209, which authorizes government enforcement actions. Section 209 is substantively different from § 210, and does not restrict government overcharge actions to direct purchases. *See Citronelle-Mobile Gathering, Inc. v. O'Leary,* 499 F.Supp. at 884–85.

ment, state or national, is not expressly included." *Id.* at 133, 58 S.Ct. at 789.

The importance of the *nullum tempus* doctrine was recently reaffirmed by the Supreme Court in *Block v. North Dakota ex. rel. Board of University and School Lands,* —— U.S. ——, 103 S.Ct. 1811, 75 L.Ed.2d 840 (1983). While the Court denied North Dakota the use of the doctrine in that case, it did so in the limited context of a state attempting to sue the federal government where Congress has waived federal immunity. The Court did "not discount the importance of the generally applicable rule of [*nullum tempus*]." *Id.* at ——, 103 S.Ct. at 1821.

In cases such as the one at hand, a state may conceivably invoke the *nullum tempus* doctrine. Unlike *Block v. North Dakota,* the federal government's sovereign immunity is not at question in the present action. Nor is there any evidence here that Congress intended to deny the states access to the *nullum tempus* doctrine, as was the case in *Block.* In fact, neither the ESA nor the Emergency Petroleum Allocation Act make reference to a limitations period.

It is this latter fact that forecloses Minnesota's attempt to employ the *nullum tempus* doctrine. TECA has held that in the absence of federal legislation establishing a limitations period for the ESA, the court is to apply the most analogous state limitations law, except where this would frustrate national public policy. *Ashland Oil Company of California v. Union Oil Co. of California,* 567 F.2d 984 (TECA 1977), *cert. denied,* 435 U.S. 994, 98 S.Ct. 1644, 56 L.Ed.2d 83 (1978). While Minnesota claims it is exempt from limitations periods in this case, Minn.Stat. 541.01 explicitly states that limitations periods established by the Minnesota Legislature "shall apply to actions by or on behalf of the state and the several political subdivisions thereof, provided that no occupant of a public way, levee, square or other ground dedicated or appropriated to public

use shall acquire, by reason of his occupancy, any title thereto."

Although the present action is brought under federal law, the court has been unable to locate any statute or case law which would limit Minn.Stat. 541.01 to actions brought under State law. Consequently, the court accepts the statute as it logically reads,[8] and applies the statute to the issue at hand. We therefore hold that Minnesota law precludes the State from asserting the *nullum tempus* doctrine in the current action, and find that the State's complaint is limited by the applicable Minnesota statutes of limitations.

The statutes of limitations which govern this action are contained in two State provisions. Minn.Stat. 541.05, subd. 1, states,

Except where the uniform commercial code otherwise prescribes, the following actions shall be commenced within six years:

.   .   .   .   .

(2) Upon a liability created by statute, other than those arising under a penalty or forfeiture or where a shorter period is provided by section 541.07

.   .   .   .   .

Minn.Stat. 541.07 provides,

Except where the uniform commercial code otherwise prescribes, the following actions shall be commenced within two years:

.   .   .   .   .

(2) Upon a statute for penalty or forfeiture;

.   .   .   .

(5) For the recovery of wages or overtime or damages, fees or penalties accruing under any federal or state law respecting the payment of wages or overtime or damages, fees or penalties. (The term "wages" means all remuneration for services or employment, including commissions and bonuses and the cash value of all remuneration in any medium other

---

8. *See Minneapolis-St. Paul Sanitary District v. City of St. Paul,* 240 Minn. 434, 437, 61 N.W.2d 533, 535–36 (1981).

than cash, where the relationship of master and servant exists and the term "damages," means single, double, or treble damages, accorded by any statutory cause of action whatsoever and whether or not the relationship of master and servant exists) . . .

The two-year limitations period prescribed by Minn.Stat. 541.07(2) clearly applies to Minnesota's allegations of intentional overcharges (Counts II and IV of Minnesota's amended complaint). In *Ashland Oil,* the court dealt with California limitations periods analogous to Minn.Stat. 541.05 and 541.07. The court found that an action for treble damages, interpreted alongside of California decisions, was clearly a penalty; consequently, the California counterpart of Minn.Stat. 541.07(2) applied. 567 F.2d at 990–91. This court has been unable to uncover Minnesota case law which defines the term "penalty." Hence, we accord the term its plain meaning, and find that an action for treble damages falls within the meaning of the term. Accordingly, Minnesota's actions for intentional overcharges are curtailed by the two-year statute of limitations mandated by Minn. Stat. 541.07(2).

There is some question as to when the two-year limitations period was tolled. Standard contends that Minnesota's allegations of intentional overcharges, first asserted in Minnesota's amended complaint, represent a different cause of action from the State's original complaint. As a result, Standard maintains that these allegations do not relate back to the date of the original complaint for limitations purposes. The court is not in agreement.

"Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading." Fed.R.Civ.P. 15(c). Minnesota's allegations of intentional overcharges refer back to the transactions which form the basis for the State's original complaint. Therefore, by the very words of Rule 15(c), the allegations

set forth in the amended complaint relate back to the original complaint.

Although Minnesota states a new legal theory—intentional overcharges—for the harm it alleges, an amendment which changes the legal theory of an action relates back to the original pleading where the same conduct or transaction is involved. *Tiller v. Atlantic Coast Line R.R.,* 323 U.S. 574, 581, 65 S.Ct. 421, 424, 89 L.Ed. 465 (1945). Such is the case here. Furthermore, while the new allegations extend the time period of the original complaint, Standard was adequately informed of both an action being brought against it and the conduct which formed the basis of that action. Consequently, the extended time period also relates back to the original complaint. *See Rural Fire Protection Co. v. Hepp,* 366 F.2d 355, 361–62 (9th Cir.1966); *see generally* 3 J. Moore, Moore's Federal Practice ¶ 15.15[3].

Accordingly, Counts II and IV of Minnesota's amended complaint are dismissed to the extent the alleged intentional overcharges occurred more than two years prior to the date of the filing of Minnesota's original complaint.

The court further finds that Minn. Stat. 541.05, subd. 1(2), mandating a six-year limitations period, governs Minnesota's claims of non-willful overcharges (Counts I and III of Minnesota's amended complaint). While Standard would have the court apply a two-year limitations period to these claims, the court feels that doing so would render Minn.Stat. 541.05, subd. 1(2), a nullity. In so finding, the court concurs with the analysis given Minn.Stat. 541.07(5) by Judge Devitt in *Fox Chemical Co. v. Amsoil, Inc.,* 445 F.Supp. 1355, 1357–59 (D.Minn.1978).

The difficulty in this area lies in the interpretation given Minn.Stat. 541.07(5). In 1953, the statute was amended to apply a two-year limitations period "[f]or the recovery of wages *or* overtime *or* damages, fees or penalties accruing under any federal or state law respecting the payment of wages *or* overtime *or* damages, fees or penalties"

(underlined words added in 1953, replacing commas). While prior to the amendment the statute was held applicable only to wage actions, the applicability of the statute since the amendment has been open to question. As the Minnesota Supreme Court said, "What the legislature intended by omitting the commas and adding the word "or," we are at a loss to understand." *Kohout v. Shakopee Foundry Co.,* 281 Minn. 401, 403, 162 N.W.2d 237, 239 (1968).

This court concurs with the opinion of Judge Devitt in *Fox Chemical* and finds that Minn.Stat. 541.07(5), as amended in 1953, was intended to be applied to wage actions, and not actions such as the one currently before us. As Judge Devitt found, were the court to apply Minn.Stat. 541.07(5) beyond wage actions to actions for damages, Minn.Stat. 541.05, subd. 1(2),[9] would be rendered superfluous. 445 F.Supp. at 1359. Furthermore, an expansive interpretation of Minn.Stat. 541.07(5) would render other provisions in 541.07 itself superfluous.[10] However, the Minnesota Legislature has mandated that "[e]very law shall be construed, if possible, to give effect to all its provisions." Minn.Stat. 645.16 (1982). Consequently, Minn.Stat. 541.07(5) must be narrowly construed to guarantee a meaning to these various other statutory provisions.

Other factors convince the court of the correctness of this interpretation. As Judge Devitt noted in *Fox Chemical,* all cases but two which have interpreted Minn. Stat. 541.07(5) have regarded the statute as applying only to wage actions. 445 F.Supp. at 1358. Of the two contrary interpretations, one is dictum,[11] while the other provides no explanation for its view.[12] Furthermore, the Legislature amended 541.-07(5) subsequent to *Fox Chemical* without altering the statute's relevant language. *See* 1982 Minn.Laws 541.07(5). Had the legislature disagreed with the interpretation given the statute, it had the opportunity in which to clarify the situation.

Finally, the court notes that a six-year limitations period is not inconsistent with the national policy reflected in ESA § 210. Such a period was upheld by the court in *U.S. Oil, Inc. v. Koch Refining Co.,* the court specifically noting the appropriateness of the period in regards national policy. 497 F.Supp. at 1131. Defendant Standard has not cited any authority to the contrary, nor has this court been able to discover such sentiment.

The court therefore finds that Minnesota's allegations of non-willful overcharges are governed by the six-year period of limitations prescribed by Minn.Stat. 541.05, subd. 1(2). Accordingly, Counts I and III of Minnesota's amended complaint are dismissed to the extent the alleged overcharges occurred more than six years prior to the date of the filing of Minnesota's original complaint.

Based upon the foregoing conclusions,

IT IS HEREBY ORDERED that:

1. Plaintiff New York's complaint be dismissed in its entirety;

2. Plaintiff Minnesota's amended complaint be dismissed to the extent it seeks recovery on behalf of State political subdivisions;

3. Plaintiff Minnesota's amended complaint be dismissed to the extent the State of Minnesota seeks recovery as *parens patriae* for alleged harm to the general interests of the State, apart from alleged harm to individual State residents;

---

9. "[T]he following actions shall be commenced within six years: . . . (2) Upon a liability created by statute, other than those arising upon a penalty or forfeiture or where a shorter period is provided by section 541.07 . . ."

10. An expansive interpretation of "damages" in subsection (5) would render damage provisions in subsections (3), (7) and (8) superfluous, while the penalty provision of subsection (2) ("Upon a statute for a penalty or forfeiture") would be rendered superfluous by subsection (5)'s treatment of penalties.

11. *Bailey v. Piper, Jaffray & Hopwood,* 414 F.Supp. 475, 484 (D.Minn.1976).

12. *General Corporation v. General Motors Corporation,* 140 F.Supp. 219 (D.Minn.1956).

4. Plaintiff Minnesota's amended complaint be dismissed to the extent it seeks recovery for alleged overcharges made in indirect purchases from defendant Standard;

5. Plaintiff Minnesota's amended complaint be dismissed to the extent it alleges intentional overcharges by defendant Standard occurring any time prior to two years before the date of the filing of Minnesota's original complaint, September 5, 1980;

6. Plaintiff Minnesota's amended complaint be dismissed to the extent it alleges non-willful overcharges by defendant Standard occurring any time prior to six years before the date of the filing of Minnesota's original complaint, September 5, 1980;

7. The remainder of defendant Standard's motion to dismiss be denied.